UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ERIC VALENTINE, | ) No. ED CV 14-01291-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| v. | ) AND ORDER |
| | ) (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") committed legal

```
              error in rejecting the opinions of treating psychiatrist
              Zimmerman;
     2.       Whether the finding that Plaintiff's subjective complaints
              are not credible is supported by clear and convincing
              evidence.
(JS at 6.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN REJECTING OR DEPRECIATING THE OPINIONS OF TREATING PSYCHIATRIST DR. ZIMMERMAN**

After administrative denials of his applications for Disability insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), Plaintiff requested and received a hearing before an ALJ which occurred on January 31, 2013. At that hearing, he was represented by counsel, and testified, and the ALJ also took testimony from a Vocational Expert ("VE"). (AR 36-74.)

The ALJ issued an unfavorable Decision on February 22, 2013. (AR 22-31.) The Decision followed the well known five step Sequential Evaluation Process as described in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 23-24.) As pertinent to this litigation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 30, 2009, the alleged onset date. (AR 24.) The ALJ determined that Plaintiff has a severe impairment of bipolar disorder. (AR 25.) At the next step, he determined that Plaintiff's impairment or

combination of impairments did not meet or medically equal any of the Listings. (Id.) After considering the evidence in the record, the ALJ determined Plaintiff's Residual Functional Capacity ("RFC") as enabling him to perform a full range of work at all exertional levels but with the following non-exertional limitations: limitation to work involving simple repetitive tasks; limitation to work involving no more than occasional contact with coworkers; and no work requiring public contact. (AR 216.) Finally, after determining, at Step Four, that Plaintiff cannot perform any past relevant work (AR 30), the ALJ at Step Five identified jobs that exist in significant numbers in the national economy that Plaintiff can perform (AR 30), thus rendering Plaintiff not under a disability during the relevant time period. (AR 31.)

Since February 2012, Plaintiff has been under the care of psychiatrist Dr. Zimmerman. (AR 29, 333.) At the beginning of his treatment, Plaintiff reported a history of bipolar disorder versus schizoaffective disorder. (AR 333.) In the JS, Plaintiff summarizes some of the examinations conducted by Dr. Zimmerman, and notates the medications prescribed by Dr. Zimmerman for Plaintiff's condition. Plaintiff notes that Dr. Zimmerman confirmed diagnoses of Bipolar I Disorder and Social Anxiety. (JS at 7, citing AR 330.) Of primary importance to this notation, Plaintiff cites the Psychiatric/ Psychological Impairment Questionnaire which Dr. Zimmerman completed on August 16, 2012. (AR 352-357.) In that document, Dr. Zimmerman affirmed his diagnoses, and summarized Plaintiff's primary symptoms. Dr. Zimmerman found that Plaintiff is "markedly limited" in his abilities to remember work procedures; to understand, remember and carry out detailed instructions; to maintain attention and

concentration for extended periods; to perform activities within a schedule; to sustain ordinary routine without supervision; to work with others; to respond appropriately to workplace changes; and to set realistic goals or make plans independently. (AR 355-357.) Dr. Zimmerman opined that Plaintiff would be capable of no more than a "low stress" work environment and that he would likely miss work more than three times a month due to his mental condition. (AR 358-359.)

Plaintiff asserts that Dr. Zimmerman's opinion was rejected by the ALJ based on two stated rationales: (1) that Dr. Zimmerman's opinions are not supported by the evidence of record or by his own progress notes; (2) that Plaintiff has not been hospitalized since 2009. (JS at 9-10, citing AR 29.)

**A.  The Law Governing Assessment of Mental Impairments**.

In evaluating mental impairments, 20 C.F.R. § 404.1520a(c)(3)(4) and § 416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to,

4

chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under § 404.1520a(c)(2) and § 416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations

---

[1] 20 C.F.R. §§ 404.1545(c) and 416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

which modify 20 C.F.R. § 404.1520a(e)(2) and § 416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF.  The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition.  These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (<u>see</u> Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three).  It is also required under § 404.1520a(c)(2) and § 416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (<u>See</u> 20

C.F.R. Part 4, subpart p, App. 1.)  The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

**B.   Analysis.**

In part, the ALJ rejected Dr. Zimmerman's conclusions because he found that they were inconsistent with Dr. Zimmerman's own progress notes, and also with the evidence as a whole. Plaintiff claims that these are overly general statements of reasoning, which are not

7

subject to identical review, but the record indicates otherwise. In particular, while the Decision does contain a general statement, or conclusion, that Dr. Zimmerman's opinions are not supported by the evidence of record or his own progress notes, the Decision itself carefully summarizes the medical evidence provided by sources other than Dr. Zimmerman, and also makes specific references to Dr. Zimmerman's own progress notes.

With regard to other evidence in the record which was found to be inconsistent with Dr. Zimmerman's conclusions, the ALJ considered Plaintiff's complete medical history. (AR 28.) Thus, the ALJ noted a Complete Psychological Evaluation ("Psychological CE") performed by Dr. Ardebili on December 22, 2011, and summarized Dr. Ardebili's conclusions in the Decision. (AR 28-29.) As summarized (and Plaintiff does not dispute the accuracy of the ALJ's summary), Dr. Ardebili's conclusions are certainly inconsistent with those of Dr. Zimmerman. The Court, of course, is aware that Dr. Zimmerman treated Plaintiff on an ongoing basis, while Dr. Ardebili performed a one-time examination. Thus, it is reasonable to expect that the ALJ's conclusions as to Dr. Zimmerman are supported by additional evidence in the record that is inconsistent with Dr. Zimmerman's own conclusions. This is the case. The record includes a February 2012 psychiatric evaluation performed at the Riverside County Mental Health Center. (AR 328.) In addition, Plaintiff was also treated by Dr. Paladugu, as a treating psychiatrist, and as the record indicates, Dr. Paladugu found that Plaintiff's concentration was "fine" or "improving" during various visits to the Redlands Community Hospital in September and October 2009. (AR 390, 392, 394-395.)

Further, Dr. Zimmerman stated his belief that Plaintiff required

hospitalization or emergency room treatment for his psychiatric symptoms three or four times per year and that he experienced episodes of deterioration or decompensation. (AR 354, 357.) The ALJ noted that the actual treatment evidence reflected that Plaintiff did not seek or obtain inpatient or emergency treatment for his psychiatric complaints after 2009. (AR 29.) Further, Plaintiff admitted on many occasions to treating and examining sources that psychiatric medication relieved or alleviated his symptoms. (AR 29, 295, 315, 331, 333, 389-390, 392, 394-399.)

With regard to Dr. Zimmerman's own clinical findings and observations, which was another factor relied upon by the ALJ, these records indicate that in February 2012 Plaintiff had a "good" response to medication and there was no evidence of psychosis or harmful ideation. (AR 333.) Between March and May of 2012, Dr. Zimmerman reported that Plaintiff's medications were effective and that he had a "stable (or stabler [sic]" condition. (AR 331.) Dr. Zimmerman denied that Plaintiff had a "grave disability." (AR 331.)

For the foregoing reasons, the Court concludes that the ALJ did not err in rejecting or depreciating Dr. Zimmerman's conclusions.

## II

### THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY
### AS TO SUBJECTIVE COMPLAINTS

In his second issue, Plaintiff asserts that the ALJ did not correctly perform the familiar two-step analysis of credibility determination set forth in Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(en banc). In particular, according to Plaintiff, the ALJ failed to offer specific, clear and convincing reasons to reject his

credibility. (JS at 15, citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007). In particular, Plaintiff acknowledges that the ALJ articulated four "rationales" to discredit Plaintiff's claims of greater mental function limitation, but he argues they are insufficient under the prevailing legal standards cited above. These reasons, as summarized by Plaintiff, were that (1) Plaintiff attempted to minimize his daily activities; (2) Plaintiff's treatment has been essentially routine and conservative; (3) Plaintiff's testimony indicated that his medications had been relatively effective in controlling his symptoms; and (4) Plaintiff had brief employment after his alleged onset date.

First, the ALJ's reliance (see AR 27) on an assessment that Plaintiff's treatment of his psychiatric symptoms and functional limitations was routine and conservative constitutes an acceptable reference to treatment history under a credibility determination. (<u>See</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). <u>See</u> <u>also</u> <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir. 2007).)

The ALJ also properly relied upon Plaintiff's own assessments and statements that his psychiatric medication had alleviated his symptoms. (AR 27.) The record supports this finding. (AR 389-390, 392, 398.) <u>See</u> <u>also</u> Plaintiff's report during his December 2011 CE that his medication was helping with his mood and affective symptoms. (AR 315.) Plaintiff's own treating psychiatrist, Dr. Zimmerman, also reported that Plaintiff's medications had been effective in March, April and May 2012. (AR 331.)

With regard to the ALJ's assessment that Plaintiff's medication regimen was conservative, and that this was in conflict with Plaintiff's own description of his symptoms, the record indicates,

10

overall, that Plaintiff was able to manage his psychiatric symptoms through medication and therapy, without hospitalization or emergency treatment after 2009. (AR 315, 331, 333, 389-390, 392, 398.)

The ALJ also analyzed and summarized Plaintiff's daily activities, which, according to the ALJ, Plaintiff attempted to minimize. (AR 27.) Indeed, the ALJ pointed out some factual inconsistencies in Plaintiff's own descriptions of his daily living activities. (Id.) Statements that Plaintiff's mother made in August 2011 also contradicted Plaintiff's own claims with regard to limitations as to his daily activities. (See AR 28, 232-234, 238, 240-242.)

Finally, the ALJ's reference to work activity after Plaintiff's alleged onset date of disability was a proper credibility assessment factor. (AR 27.) See 20 C.F.R. §§ 404.152(a), 416.929(a); Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009).

For the foregoing reasons, the Court determines that the ALJ did not err in his assessment and depreciation of Plaintiff's credibility with regard to subjective symptom reporting.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: December 19, 2014                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE